*O. M. Smith,* for plaintiff.

*Branch & Snow,* for defendant.

---

6175.   SMITH *v.* KNOWLES.

The sole complaint of the plaintiff in error is that the verdict is without evidence to support it. Various facts and circumstances in proof support the verdict, and it was within the province of the jury to accept this proof in preference to other evidence.

DECIDED AUGUST 4, 1915.

Levy and claim; from city court of Floyd county—Judge Reece. October 5, 1914.

*M. B. Eubanks,* for plaintiff in error.

*Dean & Dean, L. H. Covington,* contra.

WADE, J. Knowles sold to John Smith a tract of land, for which he took Smith's note and made him a bond for title. A judgment was obtained against Smith on this note, a deed to him, for the purpose of levy, was executed, the land was levied upon on June 19, 1913, and on September 23, 1913, 1,146 bundles of fodder and 20 acres of corn in the field were likewise levied upon under the execution issued upon the purchase-money judgment. Claude Smith, a son of the defendant in fi. fa., filed a claim to the fodder and corn levied on, and on the trial of the issue raised thereby the jury found the property subject to the execution. A motion for a new trial, based on the general grounds alone, was overruled by the trial judge, and the case brought here for review. The claimant testified, that he was 23 years old and was a son of the defendant in fi. fa.; that the corn and fodder levied upon were his property when levied on and at the time he testified; and that the defendant in fi. fa. had no right, title or interest therein, nor possession thereof. The defendant in fi. fa. likewise testified that the title to

the crop levied on was in the claimant, and that he himself had never had any right, title, interest in or possession of the crop at any time; that the crop was grown on lands he had purchased from Knowles, and the fi. fa. levied thereon grew out of the land deal between Knowles and himself. The return of the officer did not show that the property levied on was in the possession of the defendant in fi. fa. The officer testified that no one was living on the land when he made the levy, and that he found some of the fodder in the barn and some in the dwelling on the place; that the corn had not been gathered at the time of the levy, but was matured; that he did not inform the defendant in fi. fa. about the levy. One Salmon swore that he was familiar with the land on which the crop was raised, and knew who cultivated the crop on that place during the year 1913; that he saw John Smith's boys at work on this farm; that the claimant was the largest boy, and that the youngest was 10 or 12 years old; that he had a conversation with the claimant during September, 1913, and the claimant said that he was not then subject to road-tax; that he could not say how many days he saw the boys working on the farm; that he saw some of them plowing one day and frequently saw them "chopping around there;" that the boys did most of the work on the crop, and he thought they were "laying by" their corn the last time he saw them at work; that the fodder levied on was pulled by John Smith, the defendant in fi. fa., "and his boys or family," but he did not see the defendant in fi. fa. pull any fodder; that he had a conversation with Claude Smith, the claimant, as to what the latter was getting for the work he was doing in raising the crop levied on, and he said that he was hired by his father. Several witnesses testified to the general bad character of the defendant in fi. fa., and that they would not believe him on oath. The defendant in fi. fa. and the claimant were reintroduced and explained that the former did pull some of the fodder levied on, but that he did so at the instance of the claimant, who paid him therefor. There was testimony going to show that before the levy on the crop the bond for title held by the defendant in fi. fa. was transferred by him to the claimant, for a valuable consideration.

There was direct testimony, it is true, both from the defendant in fi. fa. and from the claimant, that the title to the property levied upon was in the claimant at the time the levy was made,

and the defendant in fi. fa. swore that he had never at any time had title to this crop; and yet there was proof, by an apparently disinterested witness, that the claimant himself had admitted, during the time that he was actually cultivating the crop and on more than one occasion, that he was cultivating it as a hired hand for the defendant in fi. fa., and this statement was not denied by the claimant in his testimony. There was also testimony that the crop was made by the labor of the "boys" of the defendant in fi. fa., including the claimant, and the testimony showed that the youngest of these boys was only 10 or 12 years old; and the claimant did not attempt to explain why the father permitted his minor son or sons to work on the crop, if the title thereto was altogether in the claimant or if the father had no interest therein. There was evidence that the bond for title under which the defendant in fi. fa. held possession of the land had been transferred for some valuable consideration to the claimant, but what that consideration was, and how much the claimant actually paid or even agreed to pay for the transfer, the claimant was unable to say, notwithstanding the apparently vital importance of the transaction to a young man just starting out in life, who did not claim to be more than 23 years of age, and who, as an uncontradicted witness testified, had even stated during the year he was making the crop in question that he was not old enough to be subject to road duty, and to whom the transaction must have appeared huge. The claimant was unable to produce the bond for title; which, if he had regarded it as anything more than a means to enable him or his father to defeat the just demands of the plaintiff in fi. fa., he would doubtless have preserved with the utmost care, and he could have had it recorded, together with the transfer thereon, under the provisions of Civil Code, § 4213.

As has been so often held by the Supreme Court and this court, a claim case is in the nature of an equitable proceeding; and, looking at the proved facts in a broad and comprehensive way, and bearing in mind that under the testimony adduced at the trial the jury were authorized to find that the defendant in fi. fa. had been duly impeached and that his testimony was unworthy of credit, and in view of the admission by the claimant against his interest, that he was "hired" by his father, proved and not denied, we can not say that the verdict finding the property subject to the fi. fa. was wholly without evidence to support it, and therefore contrary to law;

and since the case was fairly submitted to the jury (as we conclude from the fact that no exceptions are made to the charge of the court or on account of anything which transpired during the trial), we feel that the jury who heard the witnesses testify and observed their manner at the time were in a position to perhaps correctly determine that the circumstances in proof which tended to show title in the defendant in fi. fa. actually outweighed in probative value the direct testimony of the unimpeached claimant, delivered in his own behalf.                    *Judgment affirmed.*